UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

ROSEZETTA CHANNELL NELSON,                                                                  PLAINTIFF

V.                                                          CIVIL ACTION NO. 3:20-CV-452-CWR-RPM

COMMISSIONER OF
SOCIAL SECURITY,                                                                            DEFENDANT

## REPORT AND RECOMMENDATION

### I.   INTRODUCTION

On July 9, 2020, plaintiff Rosezetta Channell Nelson ("Nelson") filed this action under 42 U.S.C. § 405(g), seeking judicial review of the denial by the defendant Commissioner of Social Security ("Commissioner") of her application for supplemental security income ("SSI") under Title XVI of the Social Security Act ("SSA"). Doc. [1]. Nelson seeks for the Court to remand this case because the ALJ "played doctor" and prejudiced her. Doc. [14].

### II.   Procedural History

On January 12, 2018, Nelson filed for SSI. Doc. [10], at 128. The Social Security Administration ("Administration") denied Nelson's application initially and upon reconsideration. *Id.*, at 47–59. Thereafter, Nelson requested a hearing before an Administrative Law Judge ("ALJ"). *Id.*, at 86, 95. On June 11, 2019, Nelson had a VTC hearing in front of an ALJ. *Id.*, at 28–45.  On July 3, 2019, the ALJ ruled that Nelson was not entitled to SSI. *Id.*, at 10–22. Thereafter, Nelson filed a timely appeal to the Appeals Counsel ("AC"), which denied her request for review, and the appeal, on May 5, 2020. *Id.*, at 4–9. This action followed. Doc. [1].

### III.   Relevant Facts

#### A.   General

At the time of filing, Nelson was 50 years old and has a history of neuropathy, hypertension, and diabetes mellitus ("diabetes"). Doc. [10], at 20, 226, 238, 338. She is prescribed a variety of medications to control her impairments, including Gabapentin, metropolol tartrate, pravastin sodium, Novofine, and Novolog. *Id.*, at 229, 232, 235, 375, 381, 384. Her medical records reflect extensive blood and other test results related to her impairments. *Id.*, at 239–241, 274, 276–78, 293–308, 321, 344–47, 356–57, 367–71, 375, 392–400, 396–97. In 2018, Nelson seriously burned her foot and was hospitalized for seven days. *Id.*, at 311, 314–15, 317–24, 379, 382. She underwent a successful skin substitute surgery. *Ibid.*

#### B.   ALJ Hearing

##### i.   Nelson's Testimony

At her hearing, Nelson testified about the effect that her impairments have on her day-to-day life. Doc. [10], at 28–45. According to Nelson, her fingers "stay numb" and prevent her from putting on clothes at times. *Id.*, at 36. Her feet frequently swell and the swelling only recedes when she lies down. *Ibid.* Likewise, she experiences a burning sensation in her feet at least three times per day and must prop her feet up on a stool to relieve the pain. *Id.*, at 38. As well, she cannot stand or walk for more than five minutes at a time because she quickly loses her breath. *Id.*, at 38–39. Finally, her limitations prevent her from climbing stairs, prohibit her from grocery shopping without the assistance of a cart, and make personal hygiene difficult. *Id.*, at 38–40.

##### ii.   Vocational Expert Testimony

After Nelson testified, the ALJ posed questions to the Vocational Expert ("VE"). First, the VE was asked to assume that a hypothetical individual was 50 years old and had an eighth-grade

education. Doc. [10], at 41–42. Next, the VE was asked to assume that the individual could perform "medium work," including frequent handling and fingering; however, the individual would be unable to: (i) climb ladders, ropes, and scaffolds or (ii) be exposed to workplace hazards, such as moving mechanical parts and high, exposed places. *Ibid.* Responding to this hypothetical, the VE concluded that the individual could perform Nelson's past relevant work and, in any case, perform other jobs existing in the national economy. *Id.*, at 42. Changing the hypothetical slightly, the VE was asked to assume the above except that the individual was only capable of "light," not "medium," work. *Ibid.* In response to this hypothetical, the VE concluded that the individual would be unable to perform any jobs in the national economy. *Id.*, at 43.

### C. Medical Opinions

#### i. Glenn James, MD

On February 21, 2018, Disability Determinations Services ("DDS") non-examining physician Glenn James, MD ("Dr. James") reviewed the available medical records and formed his own medical opinion. Doc. [10], at 51; 20 C.F.R. § 416.913(a)(2). Dr. James opined that Nelson suffered from two "non-severe" medically determinable impairments, diabetes and hypertension. Doc. [10], at 49. He further opined that Nelson's subjective symptoms of pain, weakness, and fatigue were consistent with the objective medical evidence. *Id.*, at 50. Ultimately, Dr. James opined that Nelson did not have any limitations and was "not disabled." *Ibid.*

#### ii. Madena Gibson, MD

After Nelson sought reconsideration, on April 5, 2018, Madena Gibson, MD ("Dr. Gibson") reviewed the available medical records and formed her own medical opinion. Doc. [10], at 53–57; 20 C.F.R. § 416.913(a)(2). Dr. Gibson concurred with Dr. James that Nelson suffered from two "non-severe" medical impairments, diabetes and essential hypertension. Doc. [10], at 56. Dr.

Gibson also concluded that Nelson's subjective symptoms were grounded in objective medical evidence. *Ibid.* Ultimately, Dr. Gibson concluded that Nelson had no limitations and, thus, was "not disabled." *Id.*, at 57.

## IV.     ALJ Opinion

In her opinion, the ALJ made the following findings of fact. First, the ALJ concluded that Nelson has not engaged in substantial gainful activity since January 4, 2018. Doc. [10], at 15. The ALJ further found that Nelson suffered from several "severe" impairments, including diabetes, neuropathy, hypertension, and obesity. *Ibid.* Next, the ALJ concluded that Nelson did not suffer from a severe impairment or combination of impairments that meets or medically equals the severity of one of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.*, at 16.

Then, the ALJ determined Nelson's residual functional capacity ("RFC"). Doc. [10], at 16–20. Adopting her first hypothetical posed to the VE, the ALJ concluded that Nelson could perform "medium work," 20 C.F.R. § 416.967(c), with minimal additional limitations, Doc. [10], at 16–20.[1] In particular, Nelson could "never" (i) climb ladders, ropes, and scaffolds or (ii) be exposed to "workplace hazards[,] such as moving mechanical parts and high exposed places." *Ibid.* In forming her RFC, the ALJ also rejected the only two medical opinions of record as unpersuasive. *Id.*, at 19–20. Thereafter, the ALJ concluded that Nelson could return to her past relevant work. *Id.*, at 20.

While the ALJ found that Nelson was capable of her past work, she also proceeded to step five. Doc. [10], at 20. At step five, the ALJ found that Nelson was an individual "closely approaching advanced age," aged 50–54, because she was 50 years old when she filed for SSI. *Ibid.* Further, the ALJ found that Nelson had an eighth grade, or "limited," education and could communicate in

---

[1] The ALJ also indicated that Nelson could "frequently finger and handle bilaterally." *Ibid.*

4

English. *Ibid.* Thereafter, the ALJ noted that job skill transferability was not material to determining disability because use of the VE rules as a framework supported a finding that Nelson was "not disabled," whether or not she had transferable job skills. *Ibid.* Finally, considering her age, education, work experience, and RFC, the ALJ concluded that a significant number of jobs, around 200,000, existed in the national economy that Nelson could perform, including as a dining room attendant and laundry worker. *Id.*, at 20–21. Thus, the ALJ concluded that Nelson was not "disabled" under the SSA. *Id.*, at 21–22.

## V. Standard of Review

Under 42 U.S.C. § 405(g), the Court's review is limited to two inquiries: "(1) whether the decision is supported by substantial evidence on the record as a whole, and (2) whether the Commissioner applied the proper legal standard." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005) (citing *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)). Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, ––– U.S. –––, 139 S.Ct. 1148, 1154, 203 L.Ed.2d 504 (2019) (quotation omitted). It is "more than a mere scintilla and less than a preponderance.'" *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995) (quotation omitted). Finally, "[c]onflicts of evidence are for the Commissioner, not the courts, to resolve." *Perez*, 415 F.3d at 461 (citation omitted).

## VI. Five-Step Process Generally

A claimant is "disabled" as defined in the SSA if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner uses a sequential, five-

step approach to determine whether a claimant is so disabled. The steps include: "(1) whether the claimant is presently performing substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from performing any other substantial gainful activity." *Perez*, 415 F.3d at 461 (citing *Masterson*, 309 F.3d at 271–72).

During the first four steps, the burden of proof is on the claimant. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). The burden of proof shifts to the Commissioner at the fifth step to establish the existence of other available substantial gainful employment that the claimant can perform. *Fraga v. Bowen*, 810 F.2d 1296, 1301–2 (5th Cir. 1987). If the Commissioner identifies such employment, the burden shifts back to the claimant to prove that she could not perform the alternative work identified. *Id.* at 1302. Throughout the process, the ultimate burden of establishing disability remains with the claimant. *Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983). "A finding at any step that the claimant is not disabled ends the inquiry." *Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018) (citing *Chaparro v. Bowen*, 815 F.2d 1008, 1010 (5th Cir. 1987)).

## VII. ANALYSIS

The ALJ is responsible for determining a claimant's RFC, *Ripley,* 67 F.3d at 557, which is based on all of the relevant evidence in the record, 20 C.F.R. § 416.945(a)(1). While a claimant bears the ultimate burden of proving his disability by establishing a physical or mental impairment, *Wren v. Sullivan*, 925 F.2d 123, 128 (5th Cir. 1991); 20 C.F.R. § 416.916, an ALJ is dutybound to "fully and fairly" develop the facts relevant to a disability claim, *Carey v. Apfel*, 230 F.3d 131, 142 (5th Cir. 2000) (citation omitted); 20 C.F.R. § 416.945(a)(3). If an ALJ finds no medical opinion of record to be even partially persuasive, there is typically an evidentiary gap in the record between

the claimant's raw medical data, impairments, and remaining ability to work. *See*, *e.g.*, *Martin v. Berryhill*, No. 4:19–CV–115–JMV, 2020 WL 5089390, at *3 (N.D. Miss. Aug. 28, 2020) (collecting cases); *Thornhill v. Colvin*, No. 3:14–CV–335–M, 2015 WL 232844, at *10 (N.D. Tex. Jan. 16, 2015). Unless the remaining record "clearly establish[es]" the effect that the claimant's condition has on his ability to work, the ALJ must fill this evidentiary gap with another medical opinion. *Ripley,* 67 F.3d at 557. In all but the narrow class of cases where the record "clearly establishes" the claimant's limitations, a persuasive medical opinion must be developed and relied upon, at least in part, by an ALJ. After all, an ALJ is a layperson, *Frank v. Barnhart*, 326 F.3d 618, 621–22 (5th Cir. 2003) (per curiam) (noting that "lay intuitions" and "common sense" about medical matters are "often wrong"), who cannot reach his own RFC by simply interpreting raw medical data, *Cooley v. Comm'r of Soc. Sec.*, No. 2:20–CV–46–RPM, 2021 WL 4221620, at *5 (S.D. Miss. Sept. 15, 2021). Stated differently, an ALJ cannot *completely* reject every medical opinion of record, "interpret[] the raw medical data, and impose[] a different RFC . . . .'" *Id.* (quoting *Simoneaux v. Comm'r of Soc. Sec.*, No. CV 18–270–RLB, 2019 WL 2269916, at *8 (M.D. La. May 28, 2019)). *See also Melvin v. Astrue*, No. 1:08–CV–264–SAA, 2010 WL 908495, at *4 (N.D. Miss. March 9, 2010).

Here, the ALJ flatly rejected the only two medical opinions on record. Doc. [10], at 19 ("The undersigned does not find the opinions rendered by the Disability Determination Services (DDS) physicians persuasive."). In substance, the ALJ's RFC also drastically departed from the DDS physicians' findings. *Cooley*, 2021 WL 4221620, at *5. On one hand, the DDS physicians concluded that Nelson neither suffered from "severe" impairments, *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985) (defining a "severe" impairment as more than "a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the

7

individual's ability to work, irrespective of age, education or work experience[ . . . .]"), nor any limitations whatsoever on her ability to work, Doc. [10], at 19–20, 47–57. By contrast, the ALJ concluded that Nelson suffered from several "severe" impairments and was only capable of performing medium work with additional limitations. *Compare id.*, at 16, *with id.*, at 47–57. In short, the ALJ's RFC had no basis in the medical opinions of record. *Ibid.*

Turning to the remaining record, *Ripley,* 67 F.3d at 557, it contains extensive raw medical records, test results, surgery notes, and observations that go beyond the knowledge of a layperson, *Martin*, 2020 WL 5089390, at *3–*4. Additionally, there are no progress notes or other records by a medical source indicating the effect that Nelson's impairments have on her ability to work. *Ripley,* 67 F.3d at 557. In fact, the only significant mention of Nelson's limitations is her own testimony, which supports a finding of much greater limitations than is reflected in the ALJ's RFC. *Compare* Doc. [10], at 36–40 (including testimony from Nelson that she is unable to: (i) button her clothes at times because her fingers are "numb;" (ii) stand or walk for more than five minutes at a time; or (iii) engage in grocery shopping and personal hygiene without significant difficulty), *with* 20 C.F.R. § 416.967(c) (defining "medium work" as work that involves "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."); Doc. [10], at 16 (finding Nelson to be capable of "medium work," including frequent bilateral fingering and handling, with the additional limitations that she could "never" (i) climb stairs, ladders, and ropes or (ii) work near workplace hazards). In light of the above, the ALJ could have only formed her RFC by attempting to interpret the raw medical data in the administrative record. Since the ALJ rejected *every* medical opinion of record, "interpreted the raw medical data, and imposed a different RFC . . . .,'" she plainly "played doctor." *Cooley*, 2021 WL 4221620, at *5 (quoting *Simoneaux*, 2019 WL 2269916, at *8). *See also Williams v. Astrue*, 355 F. App'x 828, 832 n.6

8

(5th Cir. 2009) ("In *Ripley*, we held that an ALJ may not–without opinions from medical experts– derive the applicant's [RFC] based solely on the evidence of [the applicant's] claimed medical conditions. Thus, an ALJ may not rely on his own unsupported opinion as to the limitations presented by the applicant's medical conditions."). For these reasons, the ALJ's RFC determination was not supported by substantial evidence. *See*, *e.g.*, *Valliar v. Chater*, 105 F.3d 654, 1996 WL 762850, at *1 (5th Cir. 1996) ("If the ALJ fails in [his duty to develop the record], his findings cannot be considered substantially justified by the evidence."). *See also Deborah S. v. Comm'r of Soc. Sec.*, No. 4:20–CV–1580, 2021 WL 4442514, at *6 (S.D. Tex. Sept. 28, 2021); *Heather H. v. Kijakazi*, No. 4:20–CV–736, 2021 WL 4138406, at *6–*7 (S.D. Tex. Sept. 10, 2021).

Next, the Court considers whether Nelson has demonstrated prejudice. *Carey v. Apfel*, 230 F.3d 131, 142 (5th Cir. 2000). To prove prejudice, it must be established that, absent the ALJ's error, the ALJ "could and would have adduced evidence that might have altered the result." *Kane v. Heckler*, 731 F.2d 1216, 1220 (5th Cir. 1984). Here, the administrative record does not "clearly establish" the effect of Nelson's impairments on her ability to work so the ALJ was obligated to obtain another medical opinion. *Ripley,* 67 F.3d at 557. Thus, absent the ALJ's error, there would be such an opinion in the record. Next, a new medical opinion may have changed the outcome of the case. *Carey*, 230 F.3d at 142. The ALJ's second hypothetical was consistent with a finding of disability. *Id.*, at 42–43. However, since the second hypothetical contained significantly less limitations than claimed by Nelson in her testimony,[2] *compare* Doc. [10], at 36–40, *with* Doc. [10],

---

[2] As noted above, Nelson testified that her impairments significantly limit her in her day-to-day life. Doc. [10], at 36–40. For example, she cannot stand for more than five minutes at a time and can only button or fasten her clothing "sometimes." *Ibid.* Nevertheless, the ALJ's second hypothetical only differed from her RFC insofar as Nelson was limited to "light work," which still includes the ability to frequently stand and walk. 20 C.F.R. § 416.967(b). Since the only additional limitations included "never" climbing or being exposed to certain workplace hazards, the ALJ plainly failed to include most of Nelson's self-reported limitations, such as her inability to stand or walk for more than 5 minutes at a time. Doc. [10], at 36–40.

9

at 42–43; 20 C.F.R. § 416.967(b) (defining "light work"), a new medical opinion, even if only partially consistent with Nelson's testimony, might have altered the result in this case, *Kane*, 731 F.2d at 1220. For these reasons, Nelson has demonstrated prejudice and remand is required. *Martin*, 2020 WL 5089390, at *3–*4; *Thornhill*, 2015 WL 232844, at *10.

## RECOMMENDATION

Based on the foregoing, the undersigned recommends that the case be remanded for further proceedings.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to this report must serve and file written objections within fourteen (14) days after being served with a copy unless the time period is modified by the District Court. A party filing objections must specifically identify those findings, conclusions and recommendations to which objections are being made; the District Court need not consider frivolous, conclusive or general objections. Such party shall file the objections with the Clerk of the Court and serve the objections on the District Judge and on all other parties. A party's failure to file such objections to the proposed findings, conclusions and recommendation contained in this report shall bar that party from a *de novo* determination by the District Court. Additionally, a party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in this report within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions that have been accepted by the district court and for which there is no written objection. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).

**SO ORDERED AND ADJUDGED**, this the 1st day of December 2021.

/s/ *Robert P. Myers, Jr.*
ROBERT P. MYERS, JR.
UNITED STATES MAGISTRATE JUDGE